UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
at ASHLAND

CIVIL ACTION NO. 11-138-HRW

SHEILA RUNKLE,
*Administratrix of the Estate of Robert Runkle,*                    PLAINTIFF,

v.        **MEMORANDUM OPINION AND ORDER**

RONALD FLEMING, D.O.,                                               DEFENDANT.

This matter is before the Court upon the Defendant's Motion for Summary Judgment [Docket No. 127]. The motion has been fully briefed by the parties [Docket Nos. 128 and 130] and for the reasons set forth herein, the Court finds that the Defendant is entitled to judgment as a matter of law.

I.   FACTUAL AND PROCEDURAL BACKGROUND

This case arises from the medical treatment Plaintiff Sheila Runkle's son Robert Earl Runkle received while an inmate at the Little Sandy Correctional Complex in 2006.

Robert Runkle was sentenced to ten years imprisonment on September 14, 2001 by the McCracken Circuit Court. In 2003, during his incarceration at the Western Kentucky Correctional Complex, Runkle underwent extensive surgical resectioning for small intestine cancer at Western Baptist Hospital in Paducah, Kentucky. [*See* Medical Records, Docket No. 31-6]. Although the surgeons removed 25 inches of intestine in an effort to rid his body of the disease, they discovered that the tumor had perforated the lining of Runkle's bowel and extended to the mesentry of the abdomen. [*See* Deposition of Charles F. Winkler, M.D., Docket No. 31-5, pp. 22-24 and 32]. In addition, the cancer had spread to Runkle's lymphatic system. [*Id.* at p.

38]. The prognosis was poor. Following the surgery, Runkle was informed that he had a 4% chance of living five additional years with the cancer. [*Id.* at p. 26].

Runkle underwent a colonoscopy on June 7, 2005 which revealed an erythema in the distal colon. A biopsy established this as benign. The gastorenterologist who conducted the biopsy recommended that Runkle have another colonoscopy in 1 to 2 years. [*Id.* at pp. 98-99].

Runkle was ultimately transferred to the Little Sandy Correctional Complex on March 27, 2006. At that time, Defendant Ronald Fleming, M.D.,a University of Kentucky employee, was seeing patients at the prison. Dr. Fleming first saw Runkle on May 10, 2006 during an office visit. During that visit, Runkle complained of high blood pressure and acid reflux. [*See* Deposition of Ronald C. Fleming, D.O., Docket No. 31-7, p. 26]. They also discussed Runkle's cancer and Runkle requested a colonoscopy. [*Id.* at p. 30]. From his review of the record, Dr. Fleming knew that Runkle had small bowel cancer that was treated with surgical resection, chemotherapy and radiation. [ *Id.* at p. 34]. Dr. Fleming offered Runkle a rectal examination and a Hemoccult card; however, Runkle refused both and, instead, requested a colonoscopy. Fleming ordered additional lab work, a CEA value and a colonoscopy. [*Id.* at p. 36; *see also* Docket No. 31-6 May 10, 2006 Lab Orders and medical records]. Because the Little Sandy Correctional Complex lacked the means to perform a colonoscopy, doctors who requested that such procedures be done had to submit a request for approval to CorrectCare. This process involved the doctor putting in an order for treatment, or seemingly the nurse doing so at the direction of the doctor. CorrectCare's approval or denial would then be communicated to the Little Sandy Correctional Complex.

According to Dr. Fleming, on May 10, following the appointment with Runkle, he put in

2

an order for Runkle to receive additional laboratory work and a colonoscopy. He claims the May 10 colonoscopy order was denied. In his deposition, he stated that he learned of the denial from Nurse Jennifer Gilliam, who, according to Dr. Fleming, orally communicated the denial to him. Fleming further stated that Nurse Gilliam did not specify the reason that the procedure was denied, and that he was not aware of a written record of the denial.

According to Dr. Fleming, when he saw Runkle later that summer in the facility's yard, he told Runkle "several times" that the colonoscopy he ordered on May 10 was denied. He also told Runkle that he would need to exhibit more symptoms in order to have the colonoscopy approved; namely, Runkle would need to return Hemoccult cards, and these cards would then need to test positive for blood.

Dr. Fleming saw Runkle again in July 2006, this time for complaints of vertigo. He did not complain of abdominal pain or blood in the stool. [ *Id.* at p. 88]. As the two were walking out together, Dr. Fleming again informed Mr. Runkle that the colonoscopy request had been denied. [ *Id.* at p. 58].

In early September 2006, Runkle reported to sick call with abdominal pain and blood in his stool. Presence of blood was confirmed on September 8. On September 15, Dr. Fleming entered a consult request for a colonoscopy and EGD. [Docket No. 31-6]. The request was approved on September 20, and the colonoscopy was performed on October 10 at St. Claire Regional Medical Center in Morehead, Kentucky. [Docket No. 31-6]. During the procedure, a suspicious mass was found in the distal sigmoid colon.

On October 16, Dr. Fleming requested that Runkle be transferred immediately to a

3

facility that could better treat him. [Docket No. 31-6]. The pathology report eventually came back benign. [Docket No. 31-6].

Runkle was transferred to the Kentucky State Reformatory two days later and did not see Dr. Fleming again.

Following the transfer Runkle essentially received no treatment until a CT scan on December 27, 2006. This CT revealed two masses, one in the right lower quadrant mesentery and one in the rectum, both indicative of cancer. [Docket No. 31-6]. Despite these findings, surgery was not scheduled until February 26, 2007. Dr. Winkler testified that, during surgery, it was revealed that the cancer had infiltrated his abdomen had metastasized into the pelvic region. Due to of the risk of obstruction, the surgeons chose not to resect the rectal mass or the small bowel cancer. Instead, they inserted a gastrostomy tube to drain off digested materials as needed.

Runkle was released on medical parole in November 2007 and began chemotherapy. He did not tolerate the treatment well and chose to discontinue it in March 2008. [*See* Deposition of Charles F. Winkler, M.D., Docket No. 31-5, pp. 171-172]. Runkle passed away on June 28, 2008, almost five years to the date of his original resection.

On November 4, 2011, Sheila Runkle, Robert Runkle's mother and the Administratrix of his Estate filed this civil action against Dr. Fleming in the Elliott Circuit Court for wrongful death "resulting from a delay in diagnosis and treatment of recurrent cancer." [Docket No. 1]. She alleged a violation of the statutory right to medical care, medical negligence, and the tort of outrage. Defendant removed the case to this Court and, ultimately, sought summary judgment as to all claims alleged against him. The undersigned sustained Defendant's

4

dispositive motion, finding that Runkle's statutory claim and claim of outrage failed as a matter of law and, further, finding that the negligence claim ran afoul the pertinent statute of limitations [Docket No. 52].

Plaintiff appealed. The Sixth Circuit Court of Appeals affirmed summary judgment as it pertained to Plaintiff's claim of statutory right to medical care and the tort of outrage but found that the statute of limitations did not bar Plaintiff's negligence claim and remanded the case for further proceedings in that regard [Docket No. 55].

Defendant seeks judgment as a matter of law as to Plaintiff's claim of medical negligence, the only remaining claim in this case.

## II. STANDARD OF REVIEW

In 1986, the United States Supreme Court set forth the standard for summary judgment in a trilogy of cases: *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), *Celotex v. Cartett*, 477 U.S. 317. 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), and *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Following this precedent and Fed.R.Civ.P. 56©, the moving party is entitled to judgment as a matter of law when "[t]he pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact." Summary judgment is mandated against a party who has failed to establish an essential element of his or her case after adequate time for discovery. In such a situation, there is no genuine issue of material fact as the failure to prove an essential fact renders all other facts irrelevant. *Celotex v. Cartett*, 477 U.S. at 322-323.

The United States Court of Appeals for the Sixth Circuit has interpreted the United States

Supreme Court's trilogy as requiring the nonmoving party to produce enough evidence, after having had a reasonable opportunity to conduct discovery, so as to withstand a directed verdict motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989).

### III. ANALYSIS

The burden is upon Plaintiff to establish the three essential elements of a medical negligence claim: breach, causation, and injury. *Reams v. Stutler*, 642 S.W.2d 586 (Ky. 1982); *Jarboe v. Harting*, 397 S.W.2d 775 (Ky. App. 1965). Under Kentucky law, expert testimony is required in medical negligence actions to establish causation. *Green v. Owensboro Med. Health Sys.*, 231 S.W.3d 781, 783 (Ky. App. 2007). Proof of causation must be stated in terms of **probability** rather than mere **possibility**. *Baylis v. Lourdes Hosp., Inc.*, 805 S.W.2d 122, 124 (Ky. 1991). Specifically, expert opinions regarding causation must be based upon "a reasonable degree of medical probability." *Kemper v. Gordon*, 272 S.W.3d 146, 149-50 (Ky. 2008). This "probability" is defined as "more likely than not," *i.e.*, it is more than fifty percent likely that the negligence caused the complained-of injury. *See Sakler v. Anesthesiology Associates, P.S.C.*, 50 S.W.3d 210, 213-14 (Ky. App. 2001).

Plaintiff's only expert witness is Dr. Charles Winkler. In seeking summary judgment, Defendant argues that Dr. Winkler's testimony is insufficient to establish medical causation. The Court agrees.

Plaintiff does not dispute that the sole injury in this case is the alleged "loss of palliative care, *i.e.*, the treatment/alleviation of symptoms." When asked whether he could testify to a reasonable degree of medical probability that Mr. Runkle suffered a loss of palliative care based upon Dr. Fleming's alleged negligence, Dr. Winkler testified that he could not do so:

6

> Q. But can you state within a reasonable degree of medical probability, that an earlier diagnosis would have changed Mr. Runkle's palliative care?
> A. Ponder on that question a moment.
> . . .
> Q. It's possible, but it's not probable, Doctor, is that fair to say?
> A. So what type of confidence intervals do you want me to put around this?
> Q. 51 percent, Doctor.
> A. 51 percent?
> Q. Is it 51 percent likely that the palliation would have helped Mr. Runkle if it occurred earlier?
> MR. OGDEN: Objection to the form of the question. That's not—that's not the definition. The definition is to a reasonable degree of probability.
> Q. You can answer, Dr. Winkler.
> A. Yeah. *I think in a degree of medical probability, it's less than 50 percent*, clearly.
> Q. And that's unfortunate – it's unfortunate, but that's just the disease process itself, right, Doctor?
> A. It is. Can't change it.

[Winkler Trial Dep., pp. 140-42] (emphasis added).

Dr. Winkler has not satisfied the Kentucky standard which requires "a plaintiff [to] prove, by a probability greater than or equal to 51%, that [the plaintiff] would have recovered absent the malpractice." *Walton v. Johnson*, 2010 WL 1253185 at *3 (Ky. App. 2010).

Notably, even on direct examination by Plaintiff's counsel, Dr. Winkler testified only as to medical **possibility**, rather than **probability**:

> Q. And do you have an opinion as to the consequence to Mr. Runkle of what you just testified to [the alleged breach of the standard or care by Dr. Fleming]?
> A. Well, I think the delay in his – the delay in finding these out, with the repeated request for medical care allowed him to undergo symptoms that, *possibly*, he wouldn't have had if he had intervention earlier. *Maybe* there's – the *possibility* of some form of treatment that would have lessened these symptoms would have been *possible* for him.

*Id.* at pp. 86-87 (emphasis added).

7

Further, Dr. Winkler also testified that none of the medical expenses sought by Plaintiff was caused by the alleged delay in diagnosis of the cancer:

> Q. My point, Doctor, you can't say within a reasonable degree of medical probability that the delay in diagnosis caused any of these medical expenses listed here?
> A. I cannot do that.

*Id.* at 142.

As Plaintiff has no other expert testimony with which to support her claim, Dr. Winkler's testimony is dispositive of causation.

Plaintiff attempts to rehabilitate her claim by pointing to other portions of Dr. Winkler's testimony but those colloquies do not relate to causation, which is an essential element of her only claim before this Court. Dr. Winkler's testimony as to causation, specifically, the lack thereof, is fatal to her claim.

Moreover, Dr. Winkler's general statement at the outset of his deposition that he would "provide opinions within a reasonable degree pf medical probability" is irrelevant. Medical causation must be proven by the "positive and satisfactory type of evidence required to take the case to the jury on that question." *Rogers v. Sullivan*, 410 S.W.2d 624, 628 (Ky. 1966)). During Dr. Winkler's actual testimony relating to medical causation he couched it in terms of possibility and not probability. Thus, he did not provide the "positive and satisfactory evidence" to bring the case before the jury.

## IV. CONCLUSION

However, for the reasons given herein, Dr. Winkler's testimony is insufficient to establish medical causation and makes it legally impossible for Plaintiff to establish the essential elements of her claim. As such, Plaintiff's claim for medical negligence fails as a matter of law.

8

Accordingly, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment [Docket No. 127] be **SUSTAINED**.

**IT IS FURTHER ORDERED** that the Orders setting this matter for Pretrial Conference and Jury Trial be **VACATED**.

This 11th day of May, 2016.



Signed By:
*Henry R. Wilholt, Jr.*
United States District Judge